SOUTHEASTERN BANK AND TRUST COMPANY *vs.* EDWARD PAPPAS & another.[1] December 26, 1980. This case must be decided on the findings of the trial judge and the few exhibits included in the record appendix. The transcript (although shown on the docket as filed with the clerk of the courts) is not reproduced. There is no showing that the bank obtained, prior to argument, permission to refer to the transcript and to exhibits not reproduced. Mass. R.A.P. 18(a), 365 Mass. 865 (1974). See *Kunen* v. *First Agricultural Natl. Bank,* 6 Mass. App. Ct. 684, 689-690 (1978).

The trial judge found the following facts. About July 12, 1973, Pappas gave the plaintiff (the bank) his note for $25,000 for a bank loan of that amount. Later in 1973, Pappas attempted to raise money to meet his obligations, including his note to the bank. Pappas met with the other defendant, Morris, and one Eisenberg. They orally agreed to make the following "deal." Pappas was to convey his real estate to himself and Morris, subject to two prior mortgages, and "Eisenberg would pay $44,500 to Pappas in return for Pappas'[s] . . . note . . . and third mortgage." Pappas was to "manage the real estate, i.e., collect rents and arrange for maintenance and repairs." Morris would "monitor" Pappas's activities with respect to the real estate. "As part of the deal, Morris in writing guaranteed Pappas'[s] payment" of the note to the bank and part of Pappas's third mortgage note to Eisenberg. The guaranty does not state any express condition to its becoming effective but the judge found that "in fact Morris'[s] obligations under it were conditioned on Pappas'[s] management of the real estate."

Soon after the "deal" was made in December, 1973, Pappas began to be slow in turning over rents and "was less than responsive in accomplishing maintenance and repairs." Payments were not made on the mortgages and Eisenberg foreclosed his third mortgage. Pappas stopped making payments on his note to the bank, and the bank recovered judgment against Pappas for $11,000 on May 3, 1976. "The [b]ank first learned of Morris'[s] guarantee in mid-1975 . . . . The [b]ank never relied on the guarantee." Pappas "never sought to enforce . . . that guarantee."

---

[1] Irwin M. Morris.

On these findings, the trial judge correctly ruled that "the [b]ank was not entitled to the benefit of Morris'[s] guarantee" because Morris's obligations under the guaranty "were conditioned on Pappas's performance of his obligations under the deal." Of these Pappas committed a breach. The judge further ruled that the bank was not entitled to recover as a third-party beneficiary. We assume that, under the case of *Choate, Hall, and Stewart* v. *SCA Services, Inc.*, 378 Mass. 535, 547-548 (1979), the bank (never a party to the negotiations among Pappas, Morris, and Eisenberg) might have been at most an incidental beneficiary of the guaranty. This question we need not decide, for it was shown by parol evidence (see *Tilo Roofing Co.* v. *Pellerin*, 331 Mass. 743, 745-746 [1954]), that the guaranty was not to be effective unless Pappas performed his obligation to manage the property. The burden was on the bank to establish that it was intended to have the benefits of the guaranty by a direct payment to it. There is nothing to suggest that the guaranty was more than merely one element of a complicated arrangement by which the three participants in the "deal" sought to protect each other, an arrangement not to become effective unless this should become appropriate to carry out the "deal."

The judge in effect denied the bank's requests for rulings. The premise of the first request was inconsistent with the facts found. The second request was inconsistent with the *Tilo Roofing* decision. His action was proper.

*Judgment affirmed.*

*Edward Harrington* for Irwin M. Morris.
*Martin Lipman* for the plaintiff.